# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CRYSTAL STOHS,<br><br>*Plaintiff*,<br><br>vs.<br><br>BIC GRAPHICS USA MANUFACTURING CO., INC.,<br><br>and<br><br>BIC USA INC.,<br><br>and<br><br>ATCHISON PRODUCTS, INC.,<br><br>*Defendants*. | Case No. 09-2504-EFM |

## MEMORANDUM AND ORDER

This action arises out of Defendants', Bic Graphics USA Manufacturing Co., Inc. ("Bic Graphics"), BIC USA Inc. ("BIC USA"), and Atchison Products, Inc. ("Atchison Products"),[1] termination of Plaintiff, Crystal Stohs. Shortly before her termination, Plaintiff requested leave, which Defendants denied. Plaintiff contends that this denial, coupled with her subsequent termination for being absent from work, interfered with her exercise of rights afforded to her under

---

[1] Atchison Products was purchased by BIC Graphics on August 31, 2007. BIC USA is the parent company of BIC Graphics. Because the individual identity of these defendants is not pertinent to the resolution of their motion, the Court will refer to them collectively as Defendants.

the Family and Medical Leave Act ("FMLA"). This matter is now before the Court on Defendants' motion for summary judgment (Doc. 50). For the reasons stated below, the Court grants Defendants' motion.

## I. BACKGROUND/FACTS

Plaintiff began working for Defendants on or about October 17, 2005. At the time she started, Plaintiff submitted a medical profile sheet stating that she had eczema, anxiety, and depression. On April 3, 2006, Elaine Markou became Defendants' Director of Human Resources. In this capacity, Markou was responsible for handling all FMLA requests. Sometime long before February 2008, Plaintiff told Markou that she breaks out in a head to toe rash when she is under extreme stress.

On February 13, 2008, A.R., a woman with whom Plaintiff had had an intimate relationship and who also worked for Defendants, was scheduled to have surgery to repair a hernia. It was expected that A.R. would return to work in two weeks. Plaintiff requested and received vacation leave for February 13, 14, and 15 so that she could care for A.R.

Following the surgery, Plaintiff returned to work, working full days on February 18 and 19, but only a half day on the 20 because she had a rash. According to Plaintiff, she told her immediate supervisor that the rash was due to stress. Plaintiff returned to work on February 21, and worked a full day. February 21 was the last day that Plaintiff reported to work.[2]

Sometime between February 25 and 29, Plaintiff phoned Markou and requested leave. Plaintiff alleges that Markou denied her request, stating that she did not qualify for FMLA leave. Plaintiff claims that Markou made no inquiry into why she was seeking leave. Markou denied the

---

[2]The working days that Plaintiff missed between February 21 and March 6, the day of her termination, were classified as either unexcused leave or vacation leave.

request because she believed that Plaintiff was asking for leave to take care of A.R., who, because of complications from her surgery, was still hospitalized. Each day following the denial, Plaintiff phoned Defendants to inform them that she would not be able to come into work. Specifically, Plaintiff stated, "I'm not going to be able to come into work today."[3] On March 6, due to the amount of absences Plaintiff had, Markou made the decision to terminate Plaintiff's employment.

According to Plaintiff, in the weeks leading up to her termination, she "wasn't functioning."[4] Feeling that her life was overwhelming her, in February 2008, Plaintiff visited a clinical social worker. Plaintiff's social worker has testified that, based on her February meeting with Plaintiff, that she believes that the stress in Plaintiff's life at that point in time had affected her occupational functioning and had rendered her unable to perform her job. Plaintiff's social worker did not tell Plaintiff, though, that she should take a leave of absence from work. Furthermore, Plaintiff's social worker did not share her opinion with Markou before Plaintiff's termination.

## STANDARD OF REVIEW

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[5] A dispute is genuine "if the evidence allows a reasonable jury to resolve the [dispute] either way."[6] A fact is

---

[3] Doc. 51-2, p. 15.

[4] Doc. 51-2, p. 9.

[5] Fed. R. Civ. P. 56(a).

[6] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

"material" when "it is essential to the proper disposition of the claim."[7] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[8]

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact.[9] In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[10]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine [dispute] for trial."[11] The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[12] "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[13] Conclusory allegations alone cannot defeat a properly supported motion

---

[7]*Id.*

[8]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[9]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[10]*Id.* (citing *Celotex*, 477 U.S. at 325).

[11]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[12]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[13]*Adler*, 144 F.3d at 671.

for summary judgment.[14] The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[15]

Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[16]

**Analysis**

The Family Medical Leave Act provides that an eligible employee is entitled to a total of twelve work weeks of leave during any twelve-month period because of a serious health condition that renders her unable to perform her job functions.[17] The Act defines "serious health condition" as an illness, injury, impairment, or physical or mental condition that requires inpatient hospital care or continuing treatment by a health care provider.[18] To succeed on a claim that her employer interfered with her exercise of rights afforded to her under the FMLA, the plaintiff must first show that she put her employer on notice that she might be entitled to leave under the FMLA.[19] While an

---

[14] *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[15] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[16] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[17] 29 U.S.C. § 2612(a)(1)(D).

[18] 29 U.S.C. § 2611(11).

[19] *See, e.g., Scobey v. Nucor Steel-Ark.*, 580 F.3d 781, 787 (8th Cir. 2009); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 991 (8th Cir. 2005). Relying on footnote two in *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869 (10th Cir. 2004), Plaintiff argues that inadequate notice is an affirmative defense, and, as such, Defendants have the burden of proof on the issue. After reviewing the *Bones* opinion, the Court disagrees that it supports the proposition asserted. Footnote two says nothing about which party bears the burden of proof regarding notice; rather, it merely states that "the analysis of improper notice under the FMLA is separate from the analysis of the substantive claim that an employer interfered with the exercise of an employee's FMLA rights." *Bones*, 366 F.3d at 877, n.2. The Court has found no other Tenth Circuit case on the issue. Therefore, in light of this dearth, and the fact that at least the Sixth, and Seventh, and Eighth Circuits have placed the burden on the plaintiff, *see, e.g., Simpson v. Office of Chief Judge of Circuit Court of Will Cnty.*, 559 F.3d 706, 712 (7th Cir. 2009); *Grace v. USCAR*, 521 F.3d 655, 669 (6th Cir. 2008); *Woods*, 409 F.3d at 991, the Court concludes that Plaintiff must show that she provided the requisite notice in order to succeed on her FMLA interference claim.

employee need not expressly assert rights under the FLMA or even mention the FMLA to satisfy this burden, she must nevertheless provide the "employer [with] enough information for [it] to reasonably conclude that an event described in FMLA § 2613(a)(1) has occurred."[20] What constitutes enough information "will depend upon the facts and circumstances of each individual case."[21] "If the required notice is not given, . . . the employer can deny leave even if the employee has a serious health condition."[22]

Here, Defendants argue, among other things, that they are entitled to summary judgment on Plaintiff's FMLA interference claim because Plaintiff did not give them adequate notice. According to Defendants, Plaintiff failed to satisfy her burden because she merely stated that she needed leave and did not provide them with any indication that her leave qualified for FMLA protection. In

---

[20]*Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 451 (6th Cir. 1999); *see also Phillips v. Quobecor World RAI, Inc.*, 450 F.3d 308, 311 (7th Cir. 2006) ("An employee provides adequate notice to the employer by stating 'a qualifying reason for the needed leave.' " (quoting 29 C.F.R. § 825.303(b))); *Woods*, 409 F.3d at 990-91 ("Employees thus have an 'affirmative duty to indicate both the need and the reason for the leave,' and must let employers know when they anticipate returning to their position." (quoting *Sanders v. May Dep't Stores Co.*, 315 F.3d 940, 944 (8th Cir. 2003))); *Sherrod v. Phila. Gas Works*, 57 F. App'x 68, 72 (" 'An employee giving notice of the need for unpaid FMLA leave must explain the reasons for the needed leave so as to allow the employer to determine that the leave qualifies under the Act.' " (quoting 29 C.F.R. § 825.208(a)(1))); *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1130 (9th Cir. 2001) ("Employees need only notify their employers that they will be absent under circumstances which indicate that the FMLA might apply[.]"); *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 977 (5th Cir. 1998) ("The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition."); *Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1436 (11th Cir. 1997) ("[W]here an employee's need for FMLA leave is unforeseeable, the employee need only provide her employer with notice sufficient to make the employer aware that her absence is due to a potentially FMLA-qualifying reason."). At the time of Plaintiff's termination, 29 C.F.R. § 825.208(a)(1) provided that "[a]n employee giving notice of the need for unpaid FMLA leave must explain the reasons for the needed leave so as to allow the employer to determine that the leave qualifies under the Act. If the employee fails to explain the reasons, leave may be denied." Since Plaintiff's termination, section 825.208(a)(1) has been replaced by 29 C.F.R. § 825.301(b), which states:

> An employee giving notice of the need for FMLA leave does not need to expressly assert rights under the Act or even mention the FMLA to meet his or her obligation to provide notice, though the employee would need to state a qualifying reason for the needed leave and otherwise satisfy the notice requirements set forth in § 825.302 or § 825.303 depending on whether the need for leave is foreseeable or unforeseeable.

[21]*Satterfield*, 135 F.3d at 977 (internal quotation marks omitted).

[22]*Phillips*, 450 F.3d at 311.

response, Plaintiff first contends that there is genuine dispute of material fact as to this issue because the evidence shows that Markou construed Plaintiff's leave request as being one for FMLA. In her briefing, Plaintiff fails to cite to a single case where the presiding court held that that a jury question, on the issue of notice, was created simply by the fact that the employee stated, without providing any factual background, that she needed leave and her employer interpreted this request as being one for FMLA leave. After performing its own review, the Court has discovered only one case that is somewhat factually similar to the present one where the issue was addressed, *Sherrod v. Philadelphia Gas Works*[23]. There, the plaintiff argued that she had satisfied her notice burden by requesting FMLA leave and providing her employer with the reason for doing so – to take care of her grandmother.[24] The Third Circuit disagreed, concluding that an employee who asserts a reason for seeking FMLA leave that clearly is not covered by the FMLA, such as taking care of one's grandmother who did not act as their parent, does not satisfy the notice requirement.[25] The Court finds the *Sherrod* decision instructive on the question presented here. Just as it makes no sense to require an employer to inquire deeper into the employee's reason for requesting leave before denying it if the reason given clearly does not fall with the FMLA's ambit, it makes no sense to apply such a requirement when, in the absence of any stated reason at all, the circumstances leading up to the request reasonably lead the employer to believe that leave is being requested for a non-covered event, such as caring for one's hospitalized friend.[26] The employee is in the best position

---

[23] 57 F. App'x 68.

[24] 57 F. App'x at 72.

[25] 57 F. App'x at 72-73.

[26] *See* 29 U.S.C. § 2612(a)(1)(C) (stating that FMLA protected leave is available "to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition"). This is not to say that an employee must provide a detailed recitation of the reasons she is seeking leave. However, she must,

to know what health adverse condition she is laboring under and why she needs leave. The law does not require employers to be clairvoyant or "play Sherlock Holmes, scanning an employee's work history for clues as to the undisclosed, true reason for an employee's absence."[27] Thus, in a case such as this, where the surrounding circumstances suggest that the requested leave is for a non-covered reason, the employee must do more than simply state that she is seeking FMLA leave in order to discharge her notification duty.

Plaintiff contends that even though she did not expressly attribute her need for leave to her anxiety and depression, Defendants nevertheless had constructive notice that she was suffering from a serious health condition at the time she requested leave because she left work early on February 20 due to a rash. According to Plaintiff's theory, her February 20 absence should have put Defendants on notice that she was struggling with anxiety and depression because of the medical profile sheet she submitted in 2005 and the conversation she had with Markou long before February 2008. The problem with Plaintiff's argument is that there is no evidence showing that Markou, the person responsible for determining whether Plaintiff qualified for FMLA leave, knew that Plaintiff had gone home on February 20 with a rash, much less a rash caused by stress.[28] Without Markou having such knowledge, the fact that Plaintiff had a rash on February 20 simply is irrelevant to the issue of whether Defendants knew or should have known that Plaintiff had a condition that qualified for FMLA protection. Therefore, Defendants' motion should not be denied on this ground.

---

at a minimum, assert a reason that at least arguably triggers the protections afforded by the FMLA.

[27]*de La Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 687 (7th Cir. 2008).

[28]Because Plaintiff has failed to establish that Markou was aware of her leaving work because of a rash, the Court does not address whether the constructive notice doctrine applies in this case. The Courts notes, though, that it appears that the courts that have addressed the issue have uniformly held that it does not apply absent extraordinary circumstances. *See Scobey*, 580 F.3d at 788; *Byrne v. Avon Prods.*, 328 F.3d 379, 382 (7th Cir. 2003).

Alternatively, Plaintiff contends that her failure to notify Defendants of her true reason for seeking leave should be excused because the evidence, viewed in the light most favorable to her, reveals that Markou immediately denied her request and gave her no chance to explain.[29] The Court finds this contention to be without merit. This is not a case where an employee calls in requesting leave, the employer denies the request, the employee does not show for her next scheduled shift, and the employer immediately fires her. Rather, a minimum of six days passed between when Plaintiff requested leave and when her employment was terminated. Thus, Plaintiff had ample opportunity to apprise her employer of the fact that she was suffering from a severe psychological disorder, assuming that she actually was. Therefore, this contention also does not provide a basis for denying Defendants' motion.

In sum, the Court finds that Plaintiff has failed to raise a genuine dispute of material fact as to whether she gave Defendants the requisite notice. As explained above, the determination of whether the employee gave the employer adequate notice depends upon the facts and circumstances of the case. Here, approximately two weeks before requesting leave, Plaintiff had used three vacation days for the stated reason of taking care of her hospitalized friend. At the time Plaintiff made her request, the employer reasonably assumed that it was for the purpose of caring for Plaintiff's friend who was still hospitalized. When making her request, Plaintiff gave Markou no indication that she was seeking leave to remedy a condition she was suffering from, as opposed to

---

[29]Relatedly, Plaintiff also states in her briefing that summary judgment should not be granted because Defendants have offered contradictory accounts of what actually occurred when Plaintiff requested leave: in one of their interrogatory answers, Defendants stated that Markou did not ask Plaintiff about her own medical condition, while Markou testified that she did ask Plaintiff if she had a serious health condition. This argument is meritless. As explained above, Plaintiff did not satisfy the notice requirement. Thus, Markou had no duty to inquire into the reason behind Plaintiff's request. Therefore, the question of whether Markou asked Plaintiff about whether she had a serious health condition is irrelevant to the resolution of this case.

care for her hospitalized friend. Further, in the days following the denial of her request, Plaintiff again failed to provide Markou with any information capable of tipping her off that Plaintiff herself, not someone else, had a serious health conditions and that that is the reason she needed leave.[30] Under these circumstances, no reasonable jury could find that Plaintiff satisfied her burden of putting Defendants on notice that she was seeking FMLA eligible leave. Accordingly, the Court grants Defendants' motion.[31]

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment (Doc. 50) is hereby GRANTED.

**IT IS SO ORDERED**.

Dated this 5th day of April, 2011.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[30]Notably, when Plaintiff called in, she merely stated that she was not coming into work today. She never once said that she could not come into because she was not feeling good or was not able to function that day. Thus, Plaintiff's actions subsequent to the denial did nothing to dispel or displace Markou's belief that Plaintiff was seeking leave to care for her friend, not herself.

[31]*See Sherrod*, 57 F. App'x at 71-73 (finding that the employer's denial of the plaintiff's initial leave request was not improper because the plaintiff did not sufficiently explain her reason for seeking leave).